IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARLETTA M. DAVIS                    :
                                     :
        Claimant,                    : Civil Act No.
vs.                                  : 1:07-CV-02266  RCL
                                     :
MICHAEL ASTRUE                       :
COMMISSIONER OF SOCIAL               :
SECURITY                             :
                                     :
        Defendant.                   :

──────────────────────────

CLAIMANT'S MOTION FOR REVERSAL OF THE SOCIAL SECURITY DECISION
UNFAVORABLE DECISION DATED  FEBRUARY 9, 2006

        Comes Now, Carletta M. Davis, (herein after "Claimant"), by and through her counsel

the Law Office of Ardelia Davis, and moves for reversal and/or remand of the Agency's decision

denying benefits.  Claimant challenges the decision on the basis that the Administrative Law

Judge's decision was not supported by the factual evidence; that the Administrative Law Judge

erred in not fully addressing claimant's mental impairment of chronic disability as being

debilitating; that the Administrative Law Judge did not properly access Claimant's impairment

due to chronic headaches, medication and pain as it related to obtaining substantial employment,

and that the Administrative Law Judge improperly analyzed Claimant's fibroymalgia to

determine a finding that her condition was not severe.   See Claimant's Memorandum of Caselaw

and Arguments presented.

                            Respectfully submitted,
                            _____/s/_____
                            Ardelia Davis, Esq. 449203
                            717 D Street NW, Suite 300
                            Washington, DC 20004

TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………3

JURISDICTION………………………………………………………………….4

I.  STATEMENT OF ISSUES PRESENTED FOR REVIEW……………………..4

II. STATEMENT OF THE CASE…………………………………………………..4

III.     PROCEDURAL HISTORY…………………………………….………..…..5

IV.     BACKGROUND………………………………….…………………….....6

V.     LEGAL ANALYSIS…………………………………………………...10

V.  ARGUMENTS…………………………………………………………………10

        A).  The evidence did not support the ALJ's findings that claimant's impairment, which consisted of chronic headaches, limited mobility, sensitivity to light and noise, and excessive medication would allow her to obtain substantial employment………………....13
        B)   The ALJ did not properly identify Fibromyalgia as a severe
         Disability……………………………………………………………...16
        C)   The administrative law judge erred in not fully addressing claimant's mental impairment due to chronic depression as a disability…………………………….18
        D) The administrative judge's finding that claimant did not seek medical treatment in 2001 at the onset was in error……………………………………………………..20

CONCLUSION……………………………………………………………………20

# TABLE OF AUTHORITIES

**CASES**

Craig v. Chater, 76 F.3d 171(4th Cir. 2001)…………………………………………10

Garza v. Barnhart, 2005 U.S.App. Lexis 2513 (8th Cir. 2005)………………………..17

**Hall v. Harris, 658 F.2d 260 (4th Cir. 1981)**……………………………………………...15

Holohan v. Massanari, 246 F.3d 1195 (9th Cir 2001)

Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)…………………………..…..11

Johnson v. Barnhart, 434 F3d 650, 654 (4th Cir. 2005)……………………………..11

 Mastro v. Apfel, 270 F.3d 171 (4th Cir. 2001)………………………………..……10

**Nguyen v. Chater, 75 F.3d 429, 431**, (8th Cir. 1996)………………………………17

**Nance v. Barnhart, 194 F.Supp. 2d 302 (D.Del 2002)**……………………………14

Sarchet v. Chater, 78 3d.305,………………………………………………………13

Stewart v. Apfel, 2000 U.S. App. Lexis 33214; (11th Cir. 2000)…………………….12, 13

Walls v. Barnhart, 296 F.3d 290 (4th Cir. 2002)………………………..…………11

 **STATUTES**

42 U.S.C. 405(g)……………………………………………………………….4

Title II Social Security Act 205(g)…………………………………………………..4

Title XVI Sect 1631( c)……………………………………………………...4

20 C.F.R. 404. Subpart P……………………………………………………10, 16

42 U.S.C. 423 (d)(1)(A)……………………………………………………10

**JURISDICTION**

Jurisdiction is asserted pursuant to 42 U.S.C 405(g) for review of Agency decisions  and Title II under the Social Security Act 205(g); Title XVI (Supplemental Security Income) is provided for in Section 1631(c )(3) of the Social Security Act; and Section 1831 ( c) of Title 42 of the United States Code.

I.      **STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1).  The evidence did not support the ALj's findings that claimant's impairment, which consisted of chronic headaches, limited mobility, sensitivity to light and noise, and excessive medication would allow her to obtain substantial employment

2)   The ALJ did not properly identify Fibromyalgia as a severe disability

3)   The administrative law judge erred in not fully addressing claimant's mental impairment due to chronic depression as a disability

4) The administrative judge's finding that claimant did not seek medical treatment in 2001 at the onset was in error

II.      **STATEMENT OF THE CASE**

On October 17, 2002, the claimant filed application for disability insurance benefits and supplemental security income based on emotional distress and physical pain and stated that she became disabled and unable to work on June 19, 2001. For several years, Claimant was unable to work due to physical pain all over her body.  In 2002 Claimant was seen by Dr. Sheen, a Rheumatologist, an expert in arthritis, diagnosed Claimant as having symptoms consistent with those of fibromyalgia.  Dr. Sheen further noted during her examination of claimant that there

were actually positive trigger points at the cervical occiput, sternum, trapezius and lower back and lateral epicondyle regions consistent with areas generating fibromyalgia like pain.  On 12/10/02 Claimant was seen by a second Rheumatologist, Dr. Whelton, also an expert in arthritis and fibromyalgia.  Dr. Whelton performed a series of tests and blood work  to rule out other symptoms. Based upon his medical findings he properly diagnosed claimant as suffering from fbromyalgia,  and in addition to arthritis. From January 2003 to 2004, Claimant was seen by Dr. Blake, a neurologist, who treated claimant for  the chronic migraines.  Dr. Blake prescribed many of the medications for use of claimant's headaches. Exhibit 5F. From January 2003 to 2004, Claimant was seen by Dr. Blake, a neurologist, who treated claimant for  the chronic migraines.  Dr. Blake prescribed many of the medications for use of claimant's headaches. Exhibit 5F.  At no time was claimant provided with the results of any evaluations identified and performed by any DDS physician. 13F; 14F; 15 F;  nor were such documents provided to claimant's treating physician for his review of the tests or techniques used.  Claimant has been determined to be disabled and unable to work.

### III.  PROCEDURAL HISTORY

On October 17, 2002, Claimant filed her initial claim for disability alleging disability due to emotional distress and pain.  The claims were initially denied and on reconsideration, a request for a hearing was made.  At that time, Claimant was diagnosed with several debilitating conditions, including Fibromyalgia, chronic depression.  A hearing was held on November 10, 2005.  On February 6, 2006, the Office of Hearings and Appeals issued an unfavorable decision denying Claimant benefits.  Claimant then filed her petition for Review of the Agency's Final Decision on or around June 21, 2006, which was timely filed within the 60-day time limitation. On April 28, 2006 The Appeals Council denied Claimant's request for a review of the February

6, 2006 Decision denying benefits.   Claimant requested a Judicial Review.  Claimant filed

informa pauperis for purposes of waiving the $350.00 fee. However, her request was denied and

Claimant appealed the denial and filed her petition for a writ of mandamus and memorandum of

law in support of proceeding in forma pauperis. On December 5, 2007, the United States District

Court for the District of Columbia granted Claimant's motion for leave to file this petition for

review in forma pauperis.


IV.    **BACKGROUND**

       Claimant was gainfully employed as a Clerk at the Superior Court for the District of

Columbia from January 1987 until January 1997.  As a Clerk, Claimant answered phones, typed,

interviewed the public, and reviewed and paid out attorney claim vouchers.  However, during

this time, Claimant was receiving mental health counseling for emotional stress due to sexual

harassment on the job. Claimant received various mental health counseling and treatment from

Insight Therapeutic Services from 1996-1997, Counseling from Dr. Josephine King from

December 1996 until January 1997.  (Exhibit pg. 97). From December 1999 until June 2002,

Claimant received counseling from Dona Sons, and from September 2002 until October 2002,

Claimant received counseling from Linda McGhee.  Claimant also experienced chronic

headaches for days at a time. Claimant was prescribed Imitrex, by Dr. Holt, Bultatol Esg plus

from Dr. Makia and Elveabil from Dr. Holt.  The medication only made Claimant sleepy and

unable to concentrate at work. (Exhibit p. 95).   The headaches resulted in excessive absenteeism

from work. As a consequence of all the symptoms, in addition to the emotional stress, and severe

chronic headaches, Claimant was forced to resign from her job of 10 years.  From March 2001

until June 2001, Claimant attempted work as a substitute teacher.  The work was similar to her

job as a clerk, it did not involve excessive walking, or typing, Claimant's severe headaches

caused her to leave this job also. (Exhibit 84-90).  On November 27, 2007, Claimant was

diagnoses by Dr. Fisher as suffering from "significant allergic rhino conjunctivitis to both indoor

and outdoor aeroallergens.   With no relief in sight, and the emotional stress which later is

identified as depression, Claimant was unable to find employment that could accommodate her

condition.

On December 10, 2002, Claimant was seen at Georgetown University Hospital for

complaints body pains and swelling of her feet.  (Georgetown University Hospital  Dec 10, 2002

Exhibit 171).  While the examination did not detect anything significant, it was noticed that

Claimant had a mild lateral ligament laxity at both knees and positive trigger points at the

cervical occiput, sternum, trapeziums and lower back and lateral epicondyle regions.  ( Dr. V.

Steen Georgetown Uni. Hospital December 10 2002 Exhibit 171).  Dr. Steen also noted that

Claimant's condition fit the pattern for fibromyalgia.  (Exhibit 173).  Dr. Whelton, an expert in

the area of Fibromyalgia, and Dr. Wilson an orthopedic specialist, later saw claimant.  (Exhibit

pg. 132).

On December 20, 2002, Claimant was seen at the Rheumatology Ambulatory Service for

foot pain, swelling, complete body pain, migraines and fatigue.  (Exhibit 178)

 On February 3, 2003, Linda F. McGhee, Claimant's long time therapist, evaluated

Claimant.  The examination identified Claimant with major depressive disorder, along with

paranoid personality disorder.  It was noted that Claimant began to act out inappropriately and

was subject to angry outbursts. (Exhibit 193).  Claimant's emotions would range from combative

to upset and tearful, giving a way to delusional thoughts and paranoia. (Exhibit 193).  The

Counselor recommended very long term therapy to alleviate depression and paranoid ideas.  She

further indicated that Claimant's mental condition would be a barrier in a workplace setting. (Exhibit 194).

On February 13, 2003, Claimant was seen at the Georgetown Headache Clinic. The follow notes identify that Claimant's headaches lasted for 3 or more times a week, for 6-8 hours a day and at an intensity level of 5. (Exhibit 157). Claimant also identified that she experienced unconsciousness, blacking out, lightheadedness, backache, and bone and joint pains. Claimant was then taking Butalbital, Imitrex, Aleve, Elavil, Zyrtecd, Rhino Court, and Percodan. Claimant was then seen by Dr. Mary Fishman and continued to receive mental health counseling from Linda McGhee. (Exhibit 162). Head jarring, bending over, coughing, bright lights, and loud noises aggravated claimant's headaches. (Georgetown Headache Clinic Exhibit 163 dated 1/13/03).

On April 3, 2003, Doctors Katherine Blake and Neil Schiff, DDS evaluators, evaluated Claimant. According to their evaluation, although Claimant's memory was for the most part intact, Claimant's scored very weak on the Comprehensive sub test which involved social judgment. (Psychological Evaluation Exhibit 197). It was noted that given Claimant's history of mental illness, she would need significant support should she decide to seek a job. The evaluation did not address the severe headaches or the effects of medication regarding any employment.

On April 29, 2003, Claimant was seen at the Rheumatology Ambulatory Service for complaints of pain. (Exhibit 177). Dr. Tamer Taddeei, evaluated Claimant at Georgetown University Hospital (Exhibit 218). Dr. Taddei confirmed that Fibromyalgia and migraine headaches, showing greater than 11/18 ACR tender points. He recommended yoga and a cognitive behavioral therapist. (Exhibit 219).

On May 22, 2003 Dr. Wilson who concluded that Claimant should continue mental health treatment.

On May 27, 2003, Claimant was seen at the Rheumatology Ambulatory Service at Georgetown University Medical Center complaining of agonizing pain all over. Claimant displayed 11 out of 18 for the positive trigger points of Fibromyalgia. (Exhibit 176). Claimant was prescribed a pain cocktail: Motrin, Zoloft, imitrex, ambient, flexural, Elavil, klondin, and neuronim. Dr. Whelton completed a Fibromyalgia Residual Functional Capacity Questionnaire concerning the Claimant. In his evaluation, Claimant's test results and clinical findings identified 11 of 18 ACR tender points consistent with Fibromyalgia. (Exhibit 214-217). In addition to the tender points, he confirmed the following symptoms: Claimant's non-restorative sleep, subjective swelling, frequent headaches, anxiety, depression and chronic fatigue syndrome. He further found that the severity of Claimant's symptoms and emotional factors were functional limitations. The evaluation further confirmed that the symptoms were severe enough to interfere with Claimant's concentration and attention, in addition to the side effects of the medication. (Exhibit 214-217).

In his clinical findings, Dr. Whelton determined that Claimant could only sit or stand for (4) four hours during an 8 hour workday, and that she would need to walk once every 60- 120 minute. Moreover, that Claimant would need to take unscheduled breaks. Claimant could not lift more than 10 pounds, with no repetitive reaching. Exhibit 214-217). On July 29, 2003, Claimant was seen at the Rheumatology Ambulatory Service at Georgetown University Medical Center for complains of body pain. Report shows that Claimant was 11 out of 18 trigger points due to the Fibromyalgia. (Exhibit 175).

On December 29, 2003, Dr. Blake made a medical determination that due to the intensity and severity of Claimant's headaches, she was currently disabled, with the possibility of returning to work in the future. (Dr. Blake dated 12/29/03 Exhibit 213).

On August 13, 2003, Claimant's condition worsened. Claimant continued to experience pain throughout her body. By December 2003, Claimant's chronic headaches progressed from 3 days a week to daily, from moderate to severe (Georgetown Headache Clinic Exhibit 183) At this point, Claimant is taking medication daily, and is experiencing pain constantly. Claimant's activities are limited to largely sleeping most of the day. (Self-Notes Exhibit 186).

Dr. Giuseppe Scarcella evaluated claimant again on March 22, 2004. Without testing, or reviewing medical records Dr. Scarcella concluded that Claimant's history of mental illness was indicative of a mood disorder (296.90), associated with an anxiety disorder (300.00) in connection with her history of migraine headaches and fibromyalgia. (Exhibit 228).

## V.    LEGAL ANALYSIS

Title 42 U.S.C. 405(g) authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfe, 270 F.3d 171, 176 (4th Cir. 2001). Under the Social Security Act a [reviewing court] can only uphold the factual findings of the Administrative Law Judge (herein after "ALJ") if such a decision was supported by substantial evidence and was reached through application of the correct legal standard. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). In determining the appropriateness of the evidence and the legal application, Social Security follows an elaborate process for establishing disability.

Disability is the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which can last a duration of 12 months or more. 42 U.S.C. 423(d)(1)(A). The determination

of benefits involves a five (5) step method of inquiry.  Walls v. Barnhart, 296 F.3d 287, 290 (4th

Cir. 2002).  The inquires are as follows: 1) determine whether the claimant is engaged in

substantial gainful activity; 2) determine whether the claimant has a medical impairment (or

combination of impairments) that are severe; 3) determine whether or not the claimant's medical

impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20

C.F.R. 404 (p)(4); 4) determine whether or not the claimant can perform his/her past relevant

work, and 5) determine whether the claimant can perform other specified types of work.

(quoting) Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. 404.1520

(2005).  To reach the determination, there is listing of criteria that the ALJ must consider in

evaluating and weighing medical opinions.  As follows the ALJ must, 1) determine if the

physician has in fact examined the claimant; 2) identify or determine the treatment relationship

between the claimant and the physician; 3) the basis supporting the physician's opinion; 4) the

consistency of the opinion with the record, and 5) whether the physician is a specialist. See

Johnson v. Barnhart, 434 F3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. 404.1527(2005).

Claimant particularly notes that the Court typically "accords greater weight to the testimony of a

treating physician' because the treating physician has necessarily examined the Claimant and has

a treatment relationship with that Claimant. However, the rule is not absolute and it is recognized

that an ALJ may choose to give less weight to the testimony of a treating physician if there is

persuasive contrary evidence. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).  It is also

recognized that on the issue regarding subjective testimony of pain, the 4th Circuit has held that

"it is incumbent upon the ALJ to evaluate the effect of pain on a claimant's ability to function.

However, while there must be objective medical evidence of some condition that could

reasonably produce the pain, there need not be objective evidence of the pain itself or its

intensity. Id at 49.  While the need for objective medical determination of pain is still followed, the medical community recognizes new conditions which the medical community determined is not testable or determinable by diagnostic evidence.  However, In <u>Stewart v. Apfel</u>, 2000 U.S. App. Lexis 33214, 245 F.3d 793 (11th Cir. 2000), that Court recognized the need to have a more liberal understanding of the condition called "fibromyalgia".  According to the definition as defined in the American College of Rheumatology, fibromyalgia is described as

> *:… [a] syndrome [that] is a common form of generalized muscular pain and fatigue. The name "fibromyalgia" means pain in the muscles and the fibrous connective tissues (the ligaments and tendons)…. Fibromyalgia is especially confusing and often misunderstood because almost all its symptoms are also common in other conditions. In addition, it does not have a known cause….Unfortunately, because certain syndromes lack physical and laboratory [\*8]  findings (signs), but depend mostly on a person's report of complaints and feelings (symptoms), these syndromes are often viewed as not being real or important. Arthritis Foundation & American College of Rheumatology, Arthritis Information: Fibromyalgia (1992). Symptomatic patients are recommended to see a rheumatologist who is familiar with the diagnosis and treatment of the condition because not all doctors are trained to recognize the disorder. See id. Indeed, the Social Security Administration has acknowledged that the disease is not detectable through diagnostic tests but rather through medically accepted clinical techniques that show the existence of an impairment. See Memorandum from the Deputy Commissioner for Disability and Income Security Programs, to ALJ Verrell L. Dethloff (May 11, 1998). As explained by Chief Judge Posner of the*

> *Seventh Circuit: [ Fibromyalgia's ] causes or causes are unknown, there is no cure, and , of greatest importance to disability law, its symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia.* <u>Sarchet v. Chater</u>, 78 F.3d 305, 306 (7th Cir. 1996).

Much of the diagnosis realistically relies upon the treating physician's determination that a patient is disabled due to fibromyalgia, making the treating physician's determination more valuable because there are no objective signs of severity and the physician must interpret the data for the reader. (paraphrasing <u>Stewart v. Apfel</u>, 2000 U.S. App. Lexis 33214 (11 Cir. 2000). ) In this particular case, Claimant suffers from fibromyalgia.  While the ALJ denies the existence of objective medical evidence there is sufficient clinical findings to support and confirm Claimant's condition and symptoms, case in point, Claimant consistently showed 11 out of 18 trigger points of tenderness and pain.

A. <u>**THE EVIDENCE DID NOT SUPPORT THE ALJ'S FINDINGS THAT CLAIMANT'S IMPAIRMENT, WHICH CONSISTED OF CHRONIC HEADACHES, LIMITED MOBILITY, SENSITIVITY TO LIGHT AND NOISE, AND EXCESSIVE MEDICATION WOULD ALLOW HER TO OBTAIN SUBSTANTIAL EMPLOYMENT**</u>

Based upon the evidence at record concerning the amount of medication prescribed to the Claimant, the fact that the medication made her sleepy, and the chronic nature of her headaches, which intensified over a period of time, and the length of time the headaches lasted, coupled with the symptoms of depression and body pain, does not support any finding that Claimant could have found and maintained employment, no matter how sedentary it was.  This is supported by the VOC expert, who  did state that based upon Claimant's sensitivity to light, chronic headaches, sensitivity to noise, the excessive medication, no jobs would be available. (Transcript   pg. 314).  This analysis would be consistent with the clinical findings of Claimant's

treating physicians.  While the Agency may argue that Claimant's credibility was enough to discredit her claim, again that is not sufficient, because it is still contrary to the evidence presented.  Not one of the DDS Physicians addressed the concern of the chronic headaches and medication.  In fact, there was little, if any, medical statements concerning Claimant's headaches and the medication taken.  In a similar case,  <u>Nance v Barnhart</u> 194 F Supp 2d 302 (D. Del 2002), a Delaware court rationalized that under the statute, a plaintiff must be able to perform work regularly to be capable of substantial gainful activity.  In that particular case, the plaintiff suffered from a moderate level of pain on normal days, and severe pain on bad days.  The Vocational Expert  testified that plaintiff could perform several jobs with moderate pain, but severe pain would prevent her from doing so, the side effects of her medication would also prevent her from doing any jobs - physician believed she could not maintain regular employment due to unpredictable bouts of pain.

There is no question that this meets the rationalization in <u>Barnhart</u>.  The visible eye cannot see pain.  The determination of pain, its severity, its frequency, rests solely on the Claimant's description of pain.  Claimant stated that she consistently continues to suffer from severe migraines.  She complained of experiencing the migraines as far back as 2002. The headaches were attributed to emotional stress, which she was receiving counseling for since 1996.  Since 2002, Claimant was prescribed Imitrex, Bultatol Esq plus and Elveabil. (Exhibit  p. 95.).  The Imitrex was specifically to address the severe symptoms of migraines, including light and noise sensitivity, severe throbbing pain, and nausea.   The frequency and severity of the symptoms caused Claimant to leave her job in June 2002, which is undisputed.  She stated that the frequency of the headaches caused excessive absenteeism, and this would be a common concern for any job  (Claimant Testimony pg 286).   In February 2003, Claimant was seen at the

Georgetown Headache and a report indicated that Claimant suffered from chronic headaches (3) three or more times a week, in addition to experiencing blackouts, nausea, and lightheadedness, backache and joint pains. Claimant had progressed to taking Butalbital, Imitex, Aleve, Elavil, Zyrtecd, Rino Court and Percodan for pain. (Exhibit 163). In addition, bright lights, loud noises, jarring, bending, etc aggravated Claimant's headaches. By August, Claimant's headaches progressed from (3) three times a week to being daily occurrences, ranging daily from moderate to severe, and limiting her activities to mostly sleeping all day. (Exhibit 186). In the professional medical opinion of Dr. Blake, Claimant was currently disabled. (Dr. Blake dated 12/29/03 Exhibit 213). Plaintiff could not perform her past relevant jobs, which were largely semi-skilled. She was a clerk and a substitute teacher. Claimant's bouts of pain would result in excessive absenteeism, and there is no job that could actually accommodate that. As such, Claimant's impairment warrants a finding of disability without considering vocational factors. Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). The significant concern is the severity of the pain, the medications required to relieve the pain, the frequency of the pain and the potential triggers. In any job, Claimant would be exposed to the very triggers that would set off the headaches.

> Q.    … Would you give me two examples of jobs consisting with those limitations, and then tell me how many of them are available, both nationally as well as in the Washington area.
>
> A.    Okay. One would be a call out operator. And that would be DOT code 237.367-014. There would be 580 in the Washington, DC labor market, 63,000 nationally. The other is an information clerk. It's actually an SVP-3, so it's classified as semi-skilled. However, based on my experience there are unskilled information clerk positions, so I'm going to reduce the numbers. The DOT code for information clerk is 237.367.022. There would be 300 in the Washington DC labor market, 70,000 nationally…
>
> Q. I want you to consider only the Claimant's testimony, and if I were to give it full credibility, but based on the assumptions alone, in your opinion, is there any work that she could perform at this time on a full-time bases:

.

A.  No.

Q.  What did you find vocationally relevant in her testimony?

A.  Just basically any noise, busses, cars, any type of noise will exacerbate headaches, testimony that she's only able to pay attention to something for approximately ten minutes, limited use of both extremities, not just one, headaches, severe, two to thee or four times per week, lasting up to two days, very limited sleep, three to four hours per night, spending – I believe there was testimony saying she spent the majority of her time laying down in the dark.  Taking half hour naps during the day and the description of constant severe pain. (Vocational Expert Statement Exhibit pgs 313-315)

The ALJ not only ignores Claimant's testimony of pain, he disregards the analysis of Claimant's treating physicians and only relies on the statements of two DDS doctors, neither of which was identified as being specialists in chronic headaches or Fibryomalgia.  In fact, Dr. Milkoswi, whom the ALJ relies upon heavily, does not address Claimant's chronic headaches at all in his decision, nor does he address the medication. As such, the evidence supports the inability of Claimant to participate in substantial activity, or obtain substantial employment, and the ALJ's denial of Claimant's claim is not supported by the evidence.

### B.  THE ALJ ERRED IN NOT IDENTIFYING FIBROMYALGIA AS A SEVERE IMPAIRMENT

The ALJ did not have a complete understanding of what constitutes Fibroymalgia, and defined it as nothing more than chronic fatigue. Because the ALJ did not understand the symptoms and features of Fibroymalgia, he compared it to a condition that required significant medical findings to support the cause of the condition thereby impairing his decision. The ALJ determined that claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404 Subpart P, Appendix 1, Regulations 4.  The ALJ then proceeds to compare Claimant's condition to impairments of the

immune system under section 14.02A, because Claimant did, as a matter of fact, use a cane.

(Exhibit pg 19), He discounted the comparison citing that section 14.02B required significant

documentation of severe fatigue, fever, malaise and weight loss, and at least one or more of the

organs must be involved. In the Claimant's case, the ALJ looked for signs and documentation for

evidence of fevers, malaise, and weight loss and loss of organ function, which are not signs of

Fibroymalgia.  Claimant acknowledges that she had none of those symptoms.  Her symptoms

consisted of pain, pain throughout the body, depression, headaches, sensitivity to light and noise,

on a constant basis.  The ALJ ignored these symptoms and based his opinion on the limited

opinions and examinations conducted by its own DDS evaluators.   Again, not one of the DDS

evaluators relied upon by Based on this comparison alone, it is apparent that the ALJ did not

understand or have any knowledge regarding Fibromyalgia. This Court has held that  "

fibromyalgia is a chronic condition, usually diagnosed after eliminating other conditions; (2) no

confirming diagnostic tests exist; and (3) our court has long recognized fibromyalgia might be

disabling.. " Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996). the ALJ were identified as

experts in the area of fibromyalgia.   In fact, each DDS evaluator based their opinions on the lack

of objective medical evidence and they only met with the Claimant for no more than a few

minutes.  Not only did the  ALJ rely heavily on the scant opinion of its own DDS evaluators,

who basically dismissed Claimant's condition altogether, but also, the evaluators did not address

or weight their contradictory opinion in view of the opinion of  Claimant's treating physician,

namely Dr. Whelton and Dr. Blake.  Other courts have understood that "fibromyalgia is a

chronic condition usually diagnosed after eliminating other conditions, and that 2) no confirming

diagnostic tests exist; and while not controlling, but persuasive, the Eight (8)[th] Circuit has

recognized Fibromyalgia as being disabling. Garza v. Barnhart, 2005 U.S. App. Lexis 2513,

*4,5.   Again, there is medical confirmation that Claimant has fibromyalgia from Dr. Whelton, Dr. Blake and the many documented times Claimant was admitted into Georgetown Rheumatology Service for body pain.  All documents showed that Claimant was 11 out of 18 trigger points due to the Fibromyalgia. The ALJ relied on the blanket statement of  Dr. Milkoswi who cited that Claimant gave conflicting information. (Transcript _  ).  However, we are unsure of how the question was actually worded or how Claimant interpreted it.  The bias in his evaluation was evident.  Secondly, there is the statement from Dr. Nacahi who relied on Dr. Milkoswi's statement of inconsistency.  Dr. Nacahi not only discounts Claimant's condition, but offers no evaluation or medical documentation to support his diagnosis, or lack thereof, and offers no explanation for why his opinion differs from Claimant's treating physicians.  Given the lace of support and the doctors failure to address the inconsistencies of their opinions with the opinions of Claimant's treating team, the ALJ's decision was not supported by the facts.

### C.  THE ADMINISTRATIVE LAW JUDGE ERRED IN NOT FULLY ADDRESSING CLAIMANT'S MENTAL IMPAIRMENT DUE TO CHRONIC DEPRESSION

Claimant stated that she was currently being treated, among other things, for depression, stress and insomnia. ( Claimant Testimony page 290).  As of April 5, 2003, Claimant was seen by Dr. Nielf Schiff, one of her treating psychologist, who confirmed that Claimant suffered from depression  in combination with anxiety personality disorder.  On May 27, 2003, Claimant was sent for a formal psychiatric evaluation, which was recommended to answer the significant issue of malingering. Where a colorable claim of mental impairment has been raised, the social security regulations required the ALJ to complete a incorporate its mode of analysis into his decision.  On May 11, 2006, Claimant was evaluated at Georgetown University Hospital by

Linda McGhee, her mental health therapist. Claimant was again diagnosed with major depressive

disorder along with psychotic features and paranoid personality disorder.

 Claimant participated in a psychological evaluation performed by Katherine Blake, Ph.D.

Doctor Blake specifically noted Claimant has had a history of mental health treatment since

1994, and that continued treatment was recommended.   Examples of Claimant believing that she

is being "attacked" by employees, ex-boyfriends, siblings and hospital staff" seem to suggest a

significant problem concerning her social skills.   To confirm this Doctor Blake noted that

Claimant "exhibited significant weakness on the Comprehensive subtest, which involved social

judgment and the ability to use language for understanding and communication." p. 197. Dr. Cott

also noted in his evaluation that Claimant's working memory skills fell within the borderline to

low average range.  Dr. Cott even noted that based upon Claimant's level of functioning, and her

history of mental illness, while the Claimant could handle or manage her own funds, she would

"need significant support should she decide to seek a job."  Contrary to the evaluation and

assessment performed by Dr. Blake, The ALJ assessed the following based upon Dr. Blake's

evaluation of the Claimant.  (Exhibit 7).  He noted that the claimant said she was sad most days,

she had difficulty sleeping, claimant had shortness of breath, she was orientated to person, place

and time, and talkative, but cooperative.  (Decision dated   pg 18).The ALJ then surmised from

one sentence that there were no problems with Claimant's attention or concentration.  Dr. Blake's

report states the complete opposite.  Again, the ALJ relies heavily on  box 2 of the medical

disposition the Psychiatric Review Technique performed by Dr. Patricia Cott, Ph.D.  The form is

a fill in the blank, with the majority of boxes omitted, and without any statements made by the

Claimant regarding pertinent symptoms, signs, or findings.  As a matter of fact, because the

memory impairment box is left blank, it can only be assumed that Dr. Cott did not review or take

into consideration the axis diagnosis findings of Dr. Blake.  In addition, Dr. Cott only based her

diagnosis on an affective disorder and anxiety related disorders, where none is identified in her

report.  The ALJ also relies on DDS evaluator Dr. Nachai.  However, in reviewing Dr. Nachai's

report, it lacks a comprehensive evaluation summary. (See Section III). Nachai does not clarify

Claimant's limitations, and most importantly there is no explanation, as required, as to why his

conclusions differ from that of Claimant's treating physicians. Nevertheless, based on little

information, the ALJ made the determination that Claimant's condition was not severe. (Exhibit

8, pgs 199-210).


### D THE ADMINISTRATIVE JUDGE'S FINDING THAT CLAIMANT DID NOT SEEK MEDICAL TREATMENT IN 2001 AT THE ONSET WAS IN ERROR

The Decision states that the record contains no evidence of medical treatment in 2001,

the alleged onset date. (Exhibit Decision PG 14). However, the record disputes the ALJ's review

of the facts.  Claimant's symptoms of pain, especially the headaches were attributed to her

emotional stress, which she was, as a matter of fact consistently receiving treatment for prior to

2001. (Testimony pg 289). Claimant stated that she stopped working in 1997 due to stress and

depression, and she was seen by a few of doctors regarding the chronic headaches, Doctors Holt,

and Makia. (Exhibit Disability Report Adult 10/17/2002).   Again, the ALJ discounted

Claimant's history of mental health treatment and her constant attempts to seek treatment.


## VI  CONCLUSION

Based upon the arguments presented above, Claimant requests that the Court immediately

reverse the    order of Administrative Law Judge denying disability benefits, or remand this case

back to Social Security to fully address the issues on chronic headaches, chronic and fibroymalgia.

Respectfully,


_____/s/_____
Ardelia Davis, Esq. 449203
717 D Street NW
Suite 300
Washington, DC 20004